In re OCEAN DOWNS RACING ASSOCIATION, INC. and Rosecroft Trotting & Pacing Association, Inc., Debtors.

NVLAND, INC. (now t/a Elm Street Development, Inc.), Plaintiff/Judgment Creditor,

v.

Mark VOGEL, et al., Defendants.

Bankruptcy Nos. 91–5–0183–JS, 91–5–0184–JS.

Adv. Nos. 91–5398–JS, 91–5399–JS.

United States Bankruptcy Court, D. Maryland.

Oct. 14, 1993.

Order Dismissing Complaint Dec. 3, 1993.

Jay A. Shulman, Alan J. Belsky, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, Baltimore, MD, for James J. Murphy, Chapter 11 Trustee.

Kevin P. Kennedy, Shulman, Rogers, Gandal, Pordy & Ecker, P.A., Rockville, MD, for NVLand, Inc.

Ronald M. Miller, Reichelt, Nussbaum, Brown, Dukes & LaPlaca, Greenbelt, MD, for Suburban Bank of Maryland.

*MEMORANDUM OPINION DENYING MOTION OF NVLAND, INC. TO QUASH WRIT OF SEQUESTRATION ISSUED BY THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND AND ORDERING PLAINTIFF TO SHOW CAUSE WHY COMPLAINTS FOR GARNISHMENT OUGHT NOT BE DISMISSED WITH PREJUDICE*

JAMES F. SCHNEIDER, Bankruptcy Judge.

This opinion concerns a contest between two creditors holding competing state court judgments against the sole stockholder of debtor corporations in Chapter 11 to enforce their judgments in the bankruptcy court by participating in a distribution due the debtors' stockholder under a confirmed plan of reorganization, and the determination of whether their efforts to garnish funds in the hands of the Chapter 11 trustee were improper. The plaintiff, NVLand, Inc., a judgment creditor of Mark Vogel Productions, Inc., the debtors' sole stockholder, and Mark R. Vogel, individually, filed the instant complaints to record its state court judgments in this Court and obtained writs of garnishment against the Chapter 11 trustee. This matter came before the Court upon NVLand's motion to quash a competing writ of sequestration issued against the Chapter 11 trustee and others by the Circuit Court for Prince George's County, Maryland in favor of Suburban Bank of Maryland, a judgment creditor of Mark Vogel, individually. For the reasons stated, the motion will be denied and the plaintiff will be ordered to show cause why the complaints ought not be dismissed.

*FINDINGS OF FACT*

1. On January 10, 1991, Ocean Downs Racing Association, Inc. and Rosecroft Trotting & Pacing Association, Inc., filed voluntary Chapter 11 bankruptcy petitions in this Court. On the same date, James J. Murphy was appointed Chapter 11 trustee of both estates. Mark Vogel Productions, Inc., was the sole stockholder of both debtor corporations. Mark R. Vogel was the sole stockholder of Mark Vogel Productions, Inc. ["MVP"].

2. On October 11, 1991, this Court confirmed the Chapter 11 trustee's amended joint plan of reorganization, which provided for the sale of all of the stock of the debtor corporations to Colt Industries for a cash price of $18.2 million.

3. On October 15, 1991, the plaintiff, NVLand, Inc., filed the instant complaints which sought writs of garnishment against the defendants, Mark Vogel Productions, Inc., and Mark R. Vogel, individually, pursuant to Bankruptcy Rule 7069, Federal Rule of Civil Procedure 69 and Maryland Rule 2–645. The complaints recited that the plaintiff held a judgment against Mark R. Vogel, individually, entered by the Circuit Court for Montgomery County, Maryland on December 2, 1990 in the amount of $400,000 and a judgment against Mark Vogel Productions, as garnishee, in the same amount entered by the same court on September 25, 1991.

4. On October 21, 1991, this Court entered orders [P. 3] in each complaint which enrolled the said state court judgments as federal judgments, *nunc pro tunc* as of October 15, 1991, the date the complaints were filed.

5. On October 23, 1991, writs of garnishment were issued by the plaintiff against the debtors, and on October 30, 1991, against the Internal Revenue Service, the U.S. Attorney for the District of Maryland, the Attorney General of the United States and James J. Murphy, the debtor's Chapter 11 bankruptcy trustee, without prior notice.

6. Mark Vogel Productions, Inc., the Chapter 11 trustee and the United States filed motions to quash the writs.

7. On December 10, 1991, NVLand, Inc. filed in each complaint a paper entitled "Release of Writs of Garnishment" [P. 23 in Adv.Proc. No. 91–5398–JS, P. 22 in No. 91–5399–JS]. The releases were subject to terms and conditions of a stipulation and consent order dated December 9, 1991, by and between the Chapter 11 trustee, NVLand, Inc., Mark R. Vogel and Mark Vogel Productions, Inc., which provided, in pertinent part, as follows:

11. NVLand and MVP desire to settle their dispute with respect to the entitlement to distributions from Rosecroft to MVP under the Plan. The Trustee desires to accommodate NVLand and MVP in making distributions in accordance with their settlement while preserving the Trustee's position that the Trustee cannot be subjected to a garnishment by a party holding a judgment against a creditor or equity security holder of a bankruptcy estate.

12. Upon payment to NVLand of $100,-000 of the above-referenced Tax Refunds, and upon the release or extinguishment of the Writ of Sequestration, and in consideration of the above and the assignment set forth herein, NVLand shall release the Writs of Garnishment, without prejudice to the terms and conditions set forth in Paragraphs 15, 16, 17 and 18 hereof.

13. Subject to the conditions of Paragraph 14, MVP and Vogel hereby assign to NVLand all of their rights, whether existing or future and whether joint or individual, to receive any and all other payments to be made or distributions due or which become due by the Trustee to MVP and/or Vogel from either the Rosecroft estate, the Rosecroft Distribution Fund, the Ocean Downs estate and/or the Ocean Downs Distribution Fund. MVP and Vogel warrant that MVP's right to receive distributions under Class 9 of the Plan (on account of the equity security interest of MVP in Rosecroft which were [sic] cancelled under the Plan) constitutes the only other rights of either MVP or Vogel to receive distribution and/or other payments, present and/or future, from either Ocean Downs or Rosecroft. Notwithstanding this warranty, the scope of this assignment shall extend to any and all additional rights of payment and/or distributions by the Trustee to MVP and/or Vogel from either the Rosecroft estate, the Rosecroft Distribution Fund, the Ocean Downs estate and/or the Ocean Downs Distribution Fund, which now exist and/or which arise at any time in the future. The effective date of this assignment and Consent Order, for purposes of priority, shall be (i) October 15, 1991, the date the first of the above-referenced Writs of Garnishment was issued, (ii) but if that portion of this Order is successfully challenged by any entity not a party hereto, then the effective date of the instant assignment and Consent Order for purposes of priority shall be October 30, 1991, (iii) but if that too is successfully challenged by any entity not a party hereto, then the effective date shall be the date of this order. The effective date of this assignment and consent order is, however, subject to Paragraph 15 for purposes of calculating when the transfer occurs in any avoidance action in a bankruptcy or insolvency proceeding of MVP or Vogel.

14. The assignment hereby granted by MVP and Vogel to NVLand is limited to an amount equal to $300,000 plus accrued post-judgment interest on the Judgment owed by MVP and Vogel to NVLand. All payments or distributions on account of any rights of MVP and/or Vogel to payment by the Trustee from either the Rosecroft estate, the Rosecroft Distribution Fund, the Ocean Downs estate and/or the Ocean Downs Distribution Fund, whether under a plan or otherwise, as well as any other payments ordered, approved, made, due, payable or to be made payable to Vogel and/or MVP from any of those sources, shall be first distributed to satisfy the partial assignment to NVLand granted in this agreement and Consent Order ...

16. The release of the Writs of Garnishment previously served on the Trustee, the validity of which have been contested, shall be without prejudice to the re-filing of new writs of garnishment upon the first to occur of (i) the failure of MVP and Vogel to timely propose the Workout Plan or (ii) the rejection by NVLand in writing

of the Workout Plan. The right to re-file writs of garnishment is also without prejudice to the Trustee's right to contest the right of NVLand to direct a writ of garnishment to the Trustee and without prejudice to NVLand to seek to establish the validity of said writs or to seek to employ any other legal procedure to enforce its judgment against MVP and Vogel. The aforesaid assignment shall survive and remain in full force and effect notwithstanding the occurrence of either (i) and/or (ii) of this Paragraph, and notwithstanding any re-filing by NVLand of any such writs of garnishment and/or any decision by this or any other Court that any such writs should be quashed or are otherwise improper . . .

23. Mark Vogel and each of the undersigned representatives of MVP and NVLand affirmatively state that each has read the content of this Consent Order, with the assistance of counsel if required, fully understands its terms and signs the same as his/its free act and deed.

SO ORDERED, this 9th day of December, 1991.

Stipulation and consent order [PP. 23 and 24].

8. On June 26, 1992, the plaintiff, NVLand, Inc., filed motions in each adversary proceeding to enforce the terms of the stipulation. The motions alleged that the trustee had threatened to violate the stipulation in the future upon the filing of a petition in bankruptcy by Mark Vogel Productions, Inc. To these motions, Mark Vogel Productions, Inc. filed an opposition and the trustee filed a motion to dismiss. [The plaintiff withdrew the motions to enforce stipulation from consideration at the hearing, but did not dismiss the motions, which remained of record in these complaints.]

9. On December 17, 1992, NVLand, Inc. filed the instant motion [P. 29] in adversary proceeding no. 91–5399–JS to quash a writ of sequestration issued by the Circuit Court for Prince George's County, Maryland in favor of Suburban Bank of Maryland. The motion alleged that on or about August 29, 1990, Suburban Bank of Maryland (formerly known as Jefferson Bank & Trust Co.) ob-

tained a judgment in the Circuit Court for Prince George's County, Maryland, against Mark R. Vogel, individually. Thereafter, on July 30, 1992, the Bank obtained a writ of sequestration from the said court against Mark Vogel, Daniel Sandler as comptroller of MVP, James J. Murphy, trustee in bankruptcy and MVP, directing them "to sequester, to withhold, to take possession of and to collect all funds in your possession from the proceeds of sale of Rosecroft Raceway and Ocean Downs Raceway to the extent that said funds are payable to Mark Vogel Productions, Inc., whether said funds are due now or in the future, and to retain and to keep said proceeds of sale under sequestration in your hands, to the extent necessary to pay to and to satisfy the judgment herein of Suburban Bank of Maryland, formerly known as Jefferson Bank and Trust Company, against Mark Vogel, sole stockholder of Mark Vogel Productions, Inc., until such time as said funds of Defendant shall fully pay or satisfy the judgment herein or until such time as the Court shall make such other order to the contrary, . . ." Exhibit C to the motion of NVLand, Inc. to quash writ of sequestration, [P. 29]. The motion further alleged that the writ was improperly issued against the bankruptcy trustee because Vogel, individually, against whom Suburban's judgment was obtained, was not a creditor of these debtors and because the bar of Section 362 of the Bankruptcy Code operated as an automatic stay against actions to place a lien on property of the debtor.

10. At the time NVLand filed its motion to quash writ, Suburban Bank was not a party to these complaints. On January 6, 1993, Suburban Bank intervened and filed an opposition to NVLand's motion to quash writ of sequestration [P. 32]. Suburban argued that its judgment against Vogel was superior to that of NVLand and that the consent orders entered in the instant complaints violated a charging order entered on February 11, 1991 by the Circuit Court for Prince George's County against Mark Vogel Productions, Inc. Suburban admitted that its writ of sequestration was entered in error against the bankruptcy trustee, but maintained that

this Court was without jurisdiction to quash the writ.

11. Also on January 6, 1993, Mark Vogel Productions, Inc., filed a motion in adversary proceeding no. 91–5398–JS to quash the writ of garnishment issued against it by this Court in these complaints.

## CONCLUSIONS OF LAW

1. The judgment creditors of the debtors' sole stockholder have attempted by improper means to substitute their claims for that of the stockholder against the debtors' estate.

■■ 2. A Chapter 11 trustee is not subject to garnishment by the holder of a state or federal judgment against a creditor or equity security holder of a bankruptcy estate. It was an error on the part of this Court to garnish the trustee based upon federal and state judgments which bore no relation to the instant bankruptcy proceedings with reference to funds held by the trustee for distribution to creditors.

■ 3. Federal Rule of Civil Procedure 69, made applicable to bankruptcy proceedings by Bankruptcy Rule 7069, does not authorize the holder of a judgment against a creditor or equity security holder of an estate in bankruptcy to obtain a garnishment against a bankruptcy trustee. Rule 69 provides:

Rule 69. Execution

(a) In General. Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable. In aid of the judgment or execution, the judgment creditor or a successor in interest when that interest appears of record, may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held.

(b) Against Certain Public Officers. When a judgment has been entered against a collector or other officer of revenue under the circumstances stated in Title 28, U.S.C. § 2006, or against an officer of Congress in an action mentioned in the Act of March 3, 1875, ch. 130, § 8 (18 Stat. 401), U.S.C. Title 2, § 118, and when the court has given the certificate of probable cause for the officer's act as provided in those statutes, execution shall not issue against the officer or the officer's property but the final judgment shall be satisfied as provided in such statutes.

*Id.*

■■ 4. Rule 7069 merely makes applicable to bankruptcy proceedings the same postjudgment procedures followed in the U.S. district courts after a judgment is rendered. To permit a garnishment to be taken against a bankruptcy trustee would impede and frustrate the policy of promoting the orderly and expeditious administration of debtors' estates, and is therefore disfavored.

5. The trustee cited the case of *In re American Electric Telephone Co.,* 211 Fed. 88 (7th Cir.1914), decided under the Bankruptcy Act of 1898, in which the court dissolved a writ of garnishment against a trustee that had been issued by a state court and sustained by a U.S. district court. The court expressed its opinion in the following forceful language:

It is apparent that any attempt to adjust the rights of a creditor of the bankrupt as against the rights of one seeking to enforce a claim against the creditor's dividend must, when carried out to its logical result, place an additional burden upon the bankruptcy court and work a delay in the settlement of the estate. It is conceivable that garnishment proceedings may be prolonged for years, so that the court may be congested with unfinished business which in no way concerns the bankruptcy cases so remaining undisposed of, thus becoming an independent collection tribunal, whereas it was the purpose of the act, as stated in *Wood v. Wilbert,* 226 U.S. 384–387, 33 Sup. Ct. 125, 127, 57 L.Ed. 264, "to secure an equality of distribution of the estate of the

bankrupt among his creditors." In the present case, the rights of Grant as assignee of Lyman are involved and would have to be adjusted.

As long ago as 1879 it was held (*In re Cunningham*, Fed. Cas. No. 3,478 [6 F.Cas. 958]) that garnishment of a dividend in a bankruptcy case could not be entertained; that it would work delay; and that the court knew no law or usage which would justify the court in making an order directing the assignee (trustee) to pay the creditor's dividend to the party garnisheeing, as a matter of comity.

*In re Kohlsaat*, Fed. Cas. No. 7,918 [14 F.Cas. 833], the court refused to give leave to attach the dividend of a creditor of the bankrupt on the ground that it was "no part of the province of this court to become the stakeholder for parties litigant in a state court." "Whereas, in this case," says the court in *[In] re Hollander* (D.C.) 181 Fed. [1019] 1020, "the petitioner neither claims title to nor specific lien upon the fund in question, and has not procured the appointment of a receiver, who has succeeded to the creditor's title, the court cannot be asked to suspend or deny the right of the creditor to receive his dividend."

The Circuit Court of Appeals for the Ninth Circuit, in *[In] re Argonaut Shoe Co.*, 187 Fed. 784, 109 C.C.A. 632 [(9th Cir.1911)], held, in a case similar to the present case, that "the right to garnishee funds in custodia legis must depend upon express statutory authority," and that "the distribution of the assets of the bankrupt, therefore, cannot be stayed or prevented by the process of a state court, the object of which is to withhold a dividend from a creditor entitled thereto for the security of a plaintiff pending litigation."

In the case of *In re Kranich*, 182 Fed. 849 [(1910)], the District Court, upon a different state of facts from those here obtaining, permitted a garnishment proceeding to be enforced, basing its judgment upon the ground that the only objector had failed to establish his right to the fund, and the fact that a judgment had been rendered in the state court and that the trustee was not opposing the garnish-

ment. The court insisted, however, that the allowance must be accepted as purely ex gratia.

In *Re St. Albans Foundry Co.*, 4 Am. Bankr.Rep. 594, the referee permitted the garnishment of a dividend where the bankrupt had been served as garnishee previous to the bankruptcy proceedings.

Upon principle, however, we are of the opinion and hold that the question involved is not affected by any rule of comity, but is one of right; that it is not within the power of a bankruptcy court, in the absence of statutory authority, to permit the garnishment of a declared dividend, especially where, as in the present case, the rights of an assignee are involved; that the entertainment of an application to withhold distribution is contrary to the language and spirit of the bankruptcy act; that to aid a state court attachment by withholding the payment to the creditor gives entrance to a parasite upon the bankruptcy proceedings which may seriously affect the efficiency of the act and should not be tolerated.

211 Fed. at 90–91.

■ 6. The proper procedure which should have been followed in this case for the substitution of claimants in a bankruptcy estate is set forth in Bankruptcy Rule 3001(e)(2), which provides:

(2) Transfer of Claim Other Than for Security After Proof Filed. If a claim other than one based on a publicly traded note, bond, or debenture has been transferred other than for security after the proof of claim has been filed, evidence of the transfer shall be filed by the transferee. The clerk shall immediately notify the alleged transferor by mail of the filing of the evidence of transfer and that objection thereto, if any, must be filed within 20 days of the mailing of the notice or within any additional time allowed by the court. If the alleged transferor files a timely objection and the court finds, after notice and a hearing, that the claim has been transferred other than for security, it shall enter an order substituting the transferee for the transferor. If a timely objection is not filed by the alleged transferor, the trans-

feree shall be substituted for the transferor.

Bankruptcy Rule 3001(e)(2) (1993).

■ 7. Bankruptcy Rule 3001 applies to substitution of claims by holders of judgments obtained against claimants in a bankruptcy case. While the rule appears to address only voluntary assignments and transfers of claims in a bankruptcy estate, the term "transfer" as defined in Section 101(54) of the Bankruptcy Code includes "every mode, direct or indirect, absolute or conditional, *voluntary or involuntary,* of disposing of or parting with property or with an interest in property." *Id.*

■ 8. The issuance of garnishments by NVLand in the instant complaints was unprecedented and without any recognized authority. The domestication of state judgments as federal judgments appears to have been an unnecessary maneuver, according to Bankruptcy Rule 3001. The accord reached by the parties in the form of a stipulation and consent order dated December 9, 1991, which dissolved the garnishment writs, did not cure the jurisdictional defects in the filing of NVLand's claim in the form of the instant complaints.

9. The plaintiff's exclusive remedy in this case was to proceed according to the requirements of Bankruptcy Rule 3001.

■ 10. As to the writ of sequestration issued by the Circuit Court for Prince George's County, this Court lacks subject matter jurisdiction in these proceedings to decide the legality of the writ under the circumstances of this case. Because the party on whose behalf the writ was procured has acknowledged that the writ was issued in error against the bankruptcy trustee, was not served upon him and will not be enforced against the bankruptcy estate in the future, there is no case or controversy for this Court to decide. Suburban Bank acknowledged that the state court had no authority to garnish the Chapter 11 trustee in this case. The validity of the writ as it concerns other garnishees is certainly not within this Court's jurisdiction.

11. The instant complaints appear to have improperly invoked the subject matter juris-

diction of the bankruptcy court because, as this opinion has held, this Court was without authority to grant the relief prayed by the plaintiff. This leaves in doubt the validity of the stipulation between the trustee, the plaintiff and the plaintiff's judgment debtor. Unless the plaintiff shows cause to the contrary within twenty (20) days, this Court will dismiss the instant complaints with prejudice.

ORDER ACCORDINGLY.

*ORDER DISMISSING COMPLAINT*

Upon the response of NVLand, Inc. to the Show Cause Order of this Court dated October 14, 1993 [P. 41], the instant complaint is hereby DISMISSED WITH PREJUDICE. The Consent Order entered into between NVLand, Inc. and the Trustee will survive the dismissal of the complaint and will be filed in the bankruptcy case file of Rosecroft Trotting & Pacing Association, Inc., Case No. 91–5–0184–JS).

SO ORDERED.